# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

M. MCKEE,                                          )
                                                   )
                    Plaintiff,                     )
                                                   )
         v.                                        )     Case No. 4:25-cv-00737-RK
                                                   )
HONEYWELL FEDERAL                                  )
MANUFACTURING &                                    )
TECHNOLOGIES, LLC,                                 )
                                                   )
                    Defendant.                     )

## ORDER

Before the Court is Defendant Honeywell Federal Manufacturing & Technologies, LLC's motion to dismiss Plaintiff M. McKee's employment discrimination complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 5.) The motion is fully briefed. (Docs. 6, 15, 21.) After careful consideration and review, and for the reasons explained below, the Court **ORDERS** that Defendant Honeywell's motion to dismiss is **GRANTED in part** and **DENIED in part**. The following claims are **DISMISSED without prejudice** for failure to state a claim: age discrimination (Count 1 and Count 2), disability discrimination (Count 3 and Count 4), and hostile work environment (Count 8). Accordingly, only Plaintiff's claims for retaliation under federal and state law (Counts 5-7) remain.

## Background

Plaintiff M. McKee is 67 years old. (Doc. 1-1 at 27, ¶ 9.) He began working for Defendant Honeywell Federal Manufacturing & Technologies ("Honeywell") on May 13, 1996. (*Id.* at ¶ 10.) In 2016, Plaintiff began working a 9/80 schedule, which means he had every other Friday off. (*Id.* at ¶ 11.) In 2019, Plaintiff began working from home two days a week due to office space constraints. (*Id.* at ¶ 12.) During the COVID-19 pandemic, Plaintiff began fully working from home. (*Id.* at ¶ 13.) In November 2022, Plaintiff worked for Pete Scheuer, Senior Manager of Quality. (*Id.* at ¶ 15.) He had previously reported to Kelly Hass, Director of Quality. (*Id.* at ¶ 14.) In June 2023, Brad Mallen became the Senior Manager of Quality, replacing Mr. Scheuer. (*Id.* at ¶ 16.) Mr. Mallen is approximately 20 years younger than Plaintiff. (*Id.* at ¶ 17.) At that time,

Plaintiff held the title of Quality Project Specialist, a manager-level position, but did not have any employees who reported to him.  (*Id.* at ¶ 18.)

Soon after starting his supervisory role, Mr. Mallen began making "derogatory comments" about Plaintiff's "job title and high salary" and questioned why or how Plaintiff "was at that level" and "why Plaintiff didn't have to manage people."  (*Id.* at ¶ 19.)  Plaintiff alleges that during this time Mr. Mallen "became aware that Plaintiff has hearing loss and uses hearing aids, and that Plaintiff has a history of thyroid cancer."  (*Id.* at ¶ 20.)

Plaintiff alleges that Mr. Mallen "showed no respect for Plaintiff" and that he "did not understand the project scope and activities required"; in other words, Mr. Mallen "wanted the project run with a different project management style."[1]  (*Id.* at 28, ¶¶ 21, 22.)  Plaintiff alleges that Mr. Mallen sent his team "information that was not understandable" when they "asked . . . for examples of how [Mr. Mallen] wanted them to run the project."  (*Id.* at ¶¶ 23, 24.)  Plaintiff alleges that Mr. Mallen "never took time to explain what he wanted" even though the team "repeatedly asked . . . for clarification."  (*Id.* at ¶ 25.)  Plaintiff alleges that "[b]ecause of this miscommunication, [he] asked to be removed as the lead of the project."  (*Id.* at ¶ 26.)  Mr. Mallen told Plaintiff that "upper management said this isn't an option" and that Plaintiff would finish the project."  (*Id.* at ¶ 26.)  The project had a "loose" deadline of April 2024.  (*Id.* at ¶ 27.)

In November 2023, Mr. Mallen asked that Plaintiff work onsite two days per week; Plaintiff agreed to start this new schedule after the Christmas holiday.  (*Id.* at ¶¶ 28, 29.)  On January 22, 2024, Mr. Mallen scheduled a meeting with HR Generalist Morgan Foerster and Plaintiff.  During the meeting, Plaintiff alleges that he was told that he was having a "negative impact" on the organization, his schedule was changed to 5 days onsite work, and his 9/80 schedule was removed. (*Id.* at ¶¶ 30, 31.)  Plaintiff alleges that Mr. Mallen listed "areas of concern" about his performance that were inaccurate.  (*Id.* at ¶ 32.)  After Plaintiff responded to Mr. Mallen's statements, Ms. Hass, whom Plaintiff previously reported to, reached out to Plaintiff and explained that she "always appreciated his work" and that another director wanted Plaintiff to work in his organization but that Ms. Hass "really wanted Plaintiff to finish the project he was working on."  (*Id.* at 29, ¶¶ 36, 37, 39, 40.)  Plaintiff told Ms. Hass that he felt discriminated against, harassed, and that he felt he was working in a hostile environment.

---

[1] It is not clear what "the project" consists of that is referred to in Plaintiff's complaint.

2

Approximately three weeks later, Plaintiff received his performance review that included a performance improvement plan ("PIP"). (*Id.* at ¶ 43.) Failure to satisfy the PIP would mean that he would not receive his yearly bonus or raise, which had never been withheld before. (*Id.* at ¶¶ 43, 44.)

For the next three months, Plaintiff documented his work and responded as requested by the PIP, set up weekly meetings with Mr. Mallen, sent information to Mr. Mallen when he was unavailable, and rescheduled meetings as needed. (*Id.* at 30, ¶ 46.) While Plaintiff received positive feedback from management in project meetings—meetings for which Mr. Mallen was present and was in agreement—Plaintiff's one-on-one meetings with Mr. Mallen were difficult, and Mr. Mallen provided little face-to-face feedback. (*Id.* at ¶¶ 47, 52, 48.) Plaintiff alleges that Mr. Mallen "was not communicative." (*Id.* at ¶ 49.) He alleges that he never received negative feedback from Mr. Mallen until an April 22, 2024 meeting with Mr. Mallen and Ms. Foerster, where Mr. Mallen told Plaintiff that Plaintiff had not satisfied the expectations of the PIP and could face termination. (*Id.* at ¶¶ 49, 53.) Plaintiff refuted this contention. (*See id.* at ¶ 55.) Based on what Mr. Mallen said, Plaintiff believed that Mr. Mallen had talked with Plaintiff's coworkers, (*id.* at ¶ 54); when Plaintiff approached two of his coworkers, neither had negative comments about Plaintiff, (*id.* at ¶¶ 57, 59).

On April 27, 2024, five days after the prior meeting with Mr. Mallen and Ms. Foerster, Plaintiff received an email notification indicating that he had satisfied the objectives of the PIP. (*Id.* at 31, ¶ 60.) Plaintiff forwarded that email to Ms. Foerster, "upper level HR," "Jeremy,"[2] and Ms. Hass. (*Id.* at ¶ 62.) On April 30, 2024, Ms. Foerster told Plaintiff by message via Microsoft Teams that the PIP completion email had been a "mistake." (*Id.* at ¶ 64.)

On May 1, 2024, Plaintiff emailed Ms. Foerster "and all" and "included many questions and concerns regarding the PIP process"; Plaintiff complained of harassment, discrimination, and hostile work environment. (*Id.* at ¶¶ 65, 66.) On May 7, 2024, Plaintiff met with Ms. Foerster regarding Mr. Mallen's prior statements. (*Id.* at ¶ 68.) Plaintiff sent follow-up e-mails on May 8, 2024, and May 14, 2024. In the May 14 e-mail, Plaintiff again raised concerns about "targeting,

---

[2] It appears this may be a reference to Jeremy Murphy, Director of Quality for Plaintiff's organization. (*See* Doc. 1-1 at 13, ¶ 74.) The management structure is not entirely clear. As best as the Court can discern, the management hierarchy, at least after November 2022, is: Director of Quality (Mr. Murphy who replaced Ms. Hass) → Senior Manager of Quality (Mr. Mallen who replaced Mr. Scheuer) → Quality Project Specialist (Plaintiff).

bullying, discrimination, and a hostile work environment." (*Id.* at 32, ¶¶ 71, 74.) Also on May 14, 2024, Plaintiff alleges that he spoke with Virgil Hughes, Director of Quality for a different organization, who stated that he would be glad to have Plaintiff join his organization and that Plaintiff would be an excellent fit. (*Id.* at ¶ 75.) Plaintiff alleges that Mr. Murphy, the Director of Quality for Plaintiff's organization, "said he would not block Plaintiff's move" to the other organization. (*Id.* at ¶ 76.) Plaintiff communicated this information to Ms. Foerster, among others, in a May 15, 2024 e-mail. (*Id.* at ¶ 78.) The next day, Plaintiff "received a calendar invite for Monday, May 20 entitled 'Update.'" (*Id.* at ¶ 79.)

On May 20, 2024, Mr. Mallen asked Plaintiff to set up a meeting for May 21, 2024, "to go over project details," and a separate May 22, 2024 meeting for Plaintiff, Mr. Mallen, Ms. Hass, and Mr. Murphy. (*Id.* at 33, ¶ 80.) However, Plaintiff alleges that on May 20, 2024, without providing any documentation or details, Ms. Foerster and Mr. Mallen terminated Plaintiff's employment. (*Id.* at ¶ 81.)

Plaintiff asserts claims under state and federal law for age discrimination (Count 1 and Count 2), disability discrimination (Count 3 and Count 4), retaliation (Count 5, Count 6, and Count 7), and hostile work environment (Count 8). (*Id.* at 33-42.) Plaintiff seeks damages, equitable and injunctive relief, and attorney fees. (*Id.* at 42-43.) Honeywell removed the case from the Circuit Court of Jackson County, Missouri, to federal court. (Doc. 1.)

**Legal Standard**

## I.    Rule 12(b)(6) General Standard

The federal pleading rules provide that a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may challenge a pleading's legal sufficiency in a motion to dismiss. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't. of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation marks omitted). While a complaint does not need to include detailed factual allegations, the complaint must allege "more than a sheer possibility that a defendant acted unlawfully" to survive a motion to dismiss. *Wilson*,

4

850 F.3d at 371. When considering a motion to dismiss for failure to state a claim, the well-pleaded allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). However, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Generally, "[f]ailure to allege each element [of a particular claim] results in dismissal for failure to state a claim." *Gilmore v. Washington Cnty. Mem'l Hosp.*, No. 4:22 CV 1008 JMB, 2023 WL 4120888, at *6 (E.D. Mo. June 22, 2023) (citing *Brown v. Simmons*, 478 F.3d 922, 923-24 (8th Cir. 2007)).

## II. Rule 12(b)(6) Standard Applied with the *McDonnell Douglas* Burden-Shifting Framework Applicable to Employment Discrimination Claims

"Absent direct evidence of discrimination,[3] the plaintiff may establish an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021) (citation omitted). Under the burden shifting framework established in *McDonnell Douglas*,[4] "[o]nce the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011). If the employer does so, the plaintiff must show that the employer's proffered reason was pretext for discrimination. *Id*. "MHRA . . . discrimination claims are analyzed under the same framework." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (citing *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003)).

In employment discrimination cases that employ the *McDonnell Douglas* burden-shifting framework, the Court emphasizes that at the early pleadings stage, a plaintiff is not required to plead facts sufficient to establish a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "[T]he prima facie model is an evidentiary, not a pleading, standard." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). A plaintiff need not plead facts establishing a prima facie case of discrimination nor does he need to "set forth a detailed evidentiary proffer in a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citation omitted). But still, "[t]he allegations in a complaint must give plausible support to the

---

[3] This is not a direct-evidence discrimination case.

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

reduced prima facie requirements that arise under *McDonnell Douglas*." *Id*. (citation and internal quotation marks omitted) (emphasis removed). Under the proper standard of review, the elements of a prima facie case "are part of the background against which a plausibility determination should be made," and "may be used as a prism to shed light upon the plausibility of the claim." *Id*. (citation and internal quotation marks omitted).

**Discussion**

## I. Age Discrimination Claims (Count 1 and Count 2)

In Count 1 and Count 2, Plaintiff asserts claims for age discrimination under the Missouri Human Rights Act ("MHRA") and the Age Discrimination in Employment Act of 1967 ("ADEA"). "The ADEA makes it 'unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)). Like the ADEA, the MHRA prohibits an employer from discriminating against an employee because of the employee's age. Mo. Rev. Stat. § 213.055(1)(a).

To establish a prima facie case of age discrimination, Plaintiff must show he belongs to a protected class (over forty years old), (2) he was qualified for his position and met his employer's legitimate expectations, (3) he suffered an adverse employment action(s), and (4) "that the circumstances of these actions g[i]ve rise to an inference of discrimination." *Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 728 (8th Cir. 2023); *see Hester v. Dep't of Treas.*, 137 F.4th 684, 689 (8th Cir. 2025); *See* Mo. Stat. Ann. § 213.010(1). Here, Plaintiff alleges that he was more than 60 years old at the time of his termination and was therefore a member of a protected class and that he suffered adverse employment actions including termination. To establish a causal nexus between his age and his termination (or any other alleged adverse action such as the performance improvement plan), Plaintiff primarily relies on the age difference between himself and Mr. Mallen, who is approximately 20 years younger than Plaintiff.[5] Plaintiff's conclusory and speculative complaint does not give plausible support to any causal nexus between his age and any alleged adverse action, however, to state a plausible claim for age discrimination.

---

[5] This would put Mr. Mallen approximately in his mid-40's.

Plaintiff alleges that Mr. Mallen, after becoming his supervisor, commented on Plaintiff's position and salary and refused to adequately explain or clearly articulate—not just to Plaintiff but also to Plaintiff's team—Mr. Mallen's expectations and goals. Plaintiff also points to Mr. Mallen's conduct in issuing the PIP and failing to follow up or meet with Plaintiff after doing so. Without something more, however, these conclusory allegations—resting simply on the age difference between Plaintiff and Mr. Mallen—do not support a plausible inference of unlawful age discrimination. *See McMullen v. Mo. Schs. for Severely Disabled*, No. 1:22-CV-101-SNLJ, 2022 WL 4760216, at *2 (E.D. Mo. Oct. 3, 2022) (dismissing ADEA claim where plaintiff alleged nothing regarding how her dismissal was based on, connected to, or motivated by her age; although plaintiff alleged she was successfully employed by defendants for twenty years before her retirement, such an allegation fails to suggest how defendants later discriminated against her on the basis of age). Indeed, it appears that Mr. Mallen belongs to the same protected class as Plaintiff based on age, and therefore there is an inference *against* discrimination. *See O'Brien v. City of New York, Dep't of Educ.*, 686 F. Supp. 3d 221, 238 (E.D.N.Y. 2023) (recognizing in the Title VII context "a well-recognized inference against discrimination . . . where the person who participated in the allegedly adverse action is also a member of the same protected class" (internal quotation marks omitted)).

In Counts 1 and 2 (along with the other discrimination-based claims discussed below), Plaintiff's allegations that he was subjected to different terms and conditions of employment, different work requirements, and different promotion requirements, and that he was subjected to an ongoing practice and pattern of "discrimination/disparate treatment" based on his age are wholly unsupported by and untethered to any factual allegations in the complaint and are speculative. More is required to plausibly demonstrate a claim of age discrimination under either state or federal discrimination law to withstand a motion to dismiss under Rule 12(b)(6).

Honeywell's motion to dismiss Count 1 and Count 2 for failure to state a claim is **GRANTED**.

## II.  Disability Discrimination Claims (Count 3 and Count 4)

In Count 3 and Count 4, Plaintiff asserts claims for disability discrimination under the MHRA and the Americans with Disabilities Act. Specifically, Plaintiff asserts a claim for disability discrimination based on his hearing loss, use of hearing aids, history of thyroid cancer, and history of knee surgeries. (Doc. 1-1 at 17, ¶ 112; 18 at ¶ 124.)

7

### A.    Exhaustion

Under both federal and state law, to bring a claim for disability discrimination Plaintiff must first exhaust his administrative remedies by pursuing an administrative charge of discrimination with the relevant state or federal agency. *See Kale v. Aero Simulation, Inc.*, 139 F.4th 684, 689 (8th Cir. 2025); *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021). Honeywell argues that Plaintiff failed to exhaust his disability discrimination claim because he did not specify a particular medical condition anywhere in the Charge of Discrimination to support an assertion that he was discriminated against based on a disability.[6]  Honeywell acknowledges that Plaintiff checked the box for "disability" discrimination and states in the narrative section of the charge that he was "perceived as being too disabled to do my job."

As a general matter, "[m]erely checking [a] box, without asserting any supporting facts, is insufficient to state a claim" to properly administratively exhaust a claim for discrimination. *Williams-Green v. Elantas PDG, Inc.*, No. 4:18-CV-1958 JCH, 2020 WL 5554320, at \*10 (E.D. Mo. Sept. 16, 2020); *see Hyginus v. Ochsner Clinic, LLC*, No. 23-2895, 2025 WL 2061520, at \*8 & n.96 (E.D. La. July 23, 2025) (finding that "merely checking the box on the charge form that corresponds to a broad category of unlawful employment practices without any supporting facts about that alleged unlawful employment practice, is insufficient to administratively exhaust a Title VII claim") (collecting cases).  Claims are exhausted "only as to those allegations set forth in the . . . charge [of discrimination]" and which "are reasonably related to such allegations." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002).[7]  Thus, a conclusory statement of

---

[6] A redacted version of Plaintiff's MCHR and EEOC Charge of Discrimination was attached to the complaint. (Doc. 1-1 at 45-52.) An unredacted version was attached to Honeywell's motion to dismiss. (Doc. 6-1). "On a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account." *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000). "Courts have considered both EEOC and MCHR charges as parts of the public and administrative record that may be taken into account on a motion on the pleadings." *Almoghrabi v. GoJet Airlines, LLC*, No. 4:14-CV-00507-AGF, 2015 WL 2177374, at \*3 (E.D. Mo. May 8, 2015); *see Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("[A]n EEOC charge is a public record which can be considered on a motion to dismiss."); *Lewey v. Vi–Jon, Inc.*, No. 4:11CV1341 JAR, 2012 WL 1859031, at \*4 n.6 (E.D. Mo. May 22, 2012) (considering the plaintiff's MCHR charge when deciding a motion to dismiss).  Therefore, the Court can properly consider Plaintiff's MCHR and EEOC charge of discrimination.

[7] The Eighth Circuit's opinion in *Faibisch* was subsequently overruled on other grounds by *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). *See Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464, 469 n.4 (8th Cir. 2022).

8

discrimination in a charge of discrimination is not sufficient to administratively exhaust a claim to bring a lawsuit. *See id.*

In *Faibisch*, for example, the Eighth Circuit held that a plaintiff had failed to exhaust a Title VII claim for sex discrimination where, although the checkbox on the charge of discrimination form was marked for "sex discrimination," the administrative charge did not include any "facts . . . that established any connection between the alleged gender discrimination and her termination," and only included a conclusory statement that plaintiff "was also treated with hostility and adversely, impacting the terms and conditions of her employment, due to her gender/female." *Id.* (internal quotation marks omitted; quotation modified). In other words, the Eighth Circuit held in *Faibisch* that a plaintiff "may not make a conclusory statement of sex discrimination in the charge and then file suit on whatever facts or legal theory [he] may later decide upon." *Id.*; *see Slayden*, 53 F.4th at 468-69 & 469 n.4 (holding that merely checking the box for "retaliation" in the charge of discrimination was not alone sufficient to properly exhaust a claim for retaliation) (citing *Faibisch*).

Here, Plaintiff's administrative charge of discrimination marked the box for "disability" discrimination and in the narrative section he stated that he was discriminated against because he was "perceived as being too disabled to do my job." Under *Faibisch*, the Court finds that Plaintiff's conclusory, unsupported, and vague assertion of disability discrimination in the charge of discrimination is not sufficient to properly exhaust the claims for disability discrimination— particularly for actual disability but also for perceived disability as well—that he asserts here. *Cf. Joiner v. Allied Staffing*, No. 4:18-cv-0363-SRB, 2018 WL 4059462, at *4 (W.D. Mo. Aug. 24, 2018) (finding that a plaintiff has properly exhausted disability discrimination claim where she checked the box for "disability" discrimination and alleged, in part, in the narrative section of the charge of discrimination facts that she had been "injured on the job" on December 26, 2017, that she consequently "had restrictions until January 9, 2018," and that after she was injured she "started being harassed by management" and that she had not previously had any problems with management until she was injured).

### B.     Merits

Even if either disability discrimination claim had been properly exhausted, the Court separately finds that the complaint fails to plausibly state a claim for relief.

9

"The ADA prohibits employment discrimination 'against a qualified individual with a disability because of the disability of such individual.'" *Erickson v. Charter Commc'ns, Inc.*, 227 F. Supp. 2d 1095, 1100–01 (E.D. Mo. 2002) (quoting 42 U.S.C. § 12112(a)). Like the ADA, the MHRA also prohibits employment discrimination based on a disability. Mo. Rev. Stat. § 213. 055. "[C]laims under the ADA and the MHRA are governed by the same standards." *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1153 (8th Cir. 2013) (quoting *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998)).

To "establish a prima facie case under the ADA," Plaintiff must show that: "(1) [he] was disabled or regarded as a disabled person under the ADA, (2) [he] 'was qualified to perform the essential functions of the job,' and (3) [he] 'suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.'" *Canning v. Creighton Univ.*, 995 F.3d 603, 614 (8th Cir. 2021) (quoting *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012)). Similarly, to establish a prima facie case of disability discrimination under the MHRA, Plaintiff must show that: "(1) [he] has a disability, (2) Defendants took an adverse action against [him], and (3) [his] disability was the motivating factor in the employer's adverse actions." *Welcome v. Amplity, Inc.*, No. 4:22-CV-00830-RK, 2025 WL 1789892, at *19 (W.D. Mo. Jan. 3, 2025) (citation omitted).

The term "disability" under the ADA means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "[T]he 2008 amendments made clear the ADA applies to a person who has been subjected to [adverse employment] action . . . under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A)." *Olsen*, 713 F.3d at 1154 (internal quotation omitted). "The ADA and the MHRA define 'disability' nearly identically." *Stewart v. City of Osage Beach*, No. 2:10-CV-04126 NKL, 2011 WL 2693177, at *7 (W.D. Mo. July 11, 2011); *see also Erickson*, 227 F. Supp. 2d at 1101 ("[U]nder the MHRA 'disability' is defined as the substantial equivalent of 'disability' under the federal law."); Mo. Rev. Stat. § 213.010(5).

### 1.     Physical or Mental Impairment

Plaintiff alleges that he is disabled based on his hearing loss, use of hearing aids, history of thyroid cancer, and history of knee surgeries. (Doc. 15 at 11.) To meet the definition of

10

"disability," Plaintiff must allege facts that his hearing loss, use of hearing aids, history of thyroid cancer, and history of knee surgeries makes him "unable to work in a broad class of jobs" or otherwise limit another major life activity (such as communication, ambulation, self-care, education, transportation, etc.). *See Knutson*, 394 F.3d at 1051. "An injury that is medically treatable without significant residual symptoms does not rise to the level of a disability under the MHRA because a major life activity is not permanently substantially limited and [the] employee would be able to continue employment with reasonable accommodations." *Cook v. Atoma Int'l of Am., Inc.*, 930 S.W.2d 43, 47 (Mo. Ct. App. 1996); *see also Tjernagel v. Gates Corp.*, 533 F.3d 666, 672 (8th Cir. 2008) (noting that under the ADA, "[h]aving a physical or mental impairment is not enough because the impairment must also comprise a substantial limitation of a major life activity."). Plaintiff does not allege any facts to plausibly show he meets the "disability" based on a physical impairment which substantially limits one or more of his major life activities under either the ADA or the MHRA. Plaintiff alleges no facts plausibly showing that his asserted disabilities substantially limit any major life activity.

### 2. Perceived as Disabled

Plaintiff also alleges that he suffered discrimination based on Honeywell perceiving him as disabled. To meet his burden on this, Plaintiff must allege facts plausibly showing that Honeywell "either: (1) wrongly believed that he had an impairment that substantially limited one or more major life activities or (2) wrongly believed that an actual, non-limiting impairment substantially limited one or more major life activities." *Heuton*, 930 F.3d at 1019 (quoting *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 821 (Mo. 2007)). "It is insufficient to demonstrate that an employer regarded an employee as having a limitation that does not constitute a disability." *Clark v. YRC Freight*, No. 4:14-CV-00668-FJG, 2016 WL 918047, at *11 (W.D. Mo. Mar. 8, 2016). Put another way, an employer's mere knowledge of an employee's medical condition or perceiving an employee as having a medical condition "is insufficient to establish that the [employer] regarded [the plaintiff] as disabled." *Conant v. City of Hibbing*, 271 F.3d 782, 786 (8th Cir. 2001). "Instead, plaintiff must show that the 'employer mistakenly believe[d] that an employee is unable to perform a class of jobs or a broad range of jobs,' to show that the employer regards the employee as disabled." *Clark*, 2016 WL 918047, at *11 (quoting *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1093 (8th Cir. 2007)).

11

Plaintiff similarly alleges no facts plausibly showing that Defendant mistakenly believed he had an impairment that substantially limited one or more major life activities. Plaintiff's allegation that Mr. Mallen was aware of Plaintiff's hearing loss, use of hearing aids, history of thyroid cancer, and knee surgeries is legally insufficient to state a plausible claim that he was perceived as disabled. *See Burrow v. Boeing Co.*, No. 4:09CV2073 TCM, 2011 WL 1594937, at *14 (E.D. Mo. Apr. 27, 2011) ("Regarding an employee as having a limitation that is not itself a disability cannot constitute a perception of disability.") (quoting *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006). While Plaintiff suggests in his brief that his "age and disability go hand [in] hand," the complaint alleges no facts that any of the "disabilities" he has are related to his age let alone how they impact any major life activity. That Plaintiff is 67 years old and has certain medical conditions is not alone sufficient to plausibly allege that he was perceived as having a disability to state a disability discrimination claim under federal or state law. Plaintiff alleges, at most, that Mr. Mallen made comments to Plaintiff about his job title and high salary, did not provide clear instructions or communicate with Plaintiff (and his team) well, and ultimately raised concerns about Plaintiff's performance which culminated in Plaintiff being placed on a PIP and then terminated. Plaintiff's claims for disability discrimination, like his age discrimination claims, are conclusory and speculative and fail to state a plausible claim for relief.

For these reasons, Honeywell's motion to dismiss Counts 3 and 4 for failure to state a claim is **GRANTED**.

## III.  Retaliation (Counts 5-7)

In Counts 5-7, Plaintiff asserts three claims under state and federal law that after he complained of discrimination or harassment based on his age or disability, he was retaliated against by harassment, being placed on the PIP, and then terminated. Specifically, Plaintiff alleges that he was placed on a PIP three weeks after he complained to Ms. Hass in January 2024 "that he felt discriminated against, harassed, and was working in a hostile environment." Then, Plaintiff alleges that he was terminated approximately three weeks after he again complained to management in May 2024, "of targeting, bullying, discrimination, and a hostile work environment."

To state a claim for retaliation, a plaintiff must plausibly allege facts showing (1) he engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse action. *Canning v. Creighton Univ.*, 995 F.3d 603, 615 (8th Cir. 2021) (ADA); *Kneibert v. Thomson Newspapers*, 129 F.3d 444,

12

454 (8th Cir. 1997) (ADEA); *Rimson v. Amazon Logistics, Inc.*, 652 F. Supp. 3d 1048, 1061 (W.D. Mo. 2023) (MHRA). Honeywell argues that Plaintiff fails to adequately plead element (3) causation. Causation requires facts that the protected conduct a plaintiff had engaged in is "causally linked" to the adverse action. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). There is no dispute that Plaintiff's placement on the PIP and his termination constitute adverse employment actions,[8] but Plaintiff must still allege facts that he engaged in statutorily protected activity, and there was a causal connection between his actions and his placement on the PIP or his termination.

"[A]n employee can establish a causal link between [his] protected activity and the adverse employment action through the timing of the two events[.]" *Lightner v. Catalent CTS (Kan. City), LLC*, 89 F.4th 648, 656 (8th Cir. 2023) (internal quotation marks omitted). "[T]emporal evidence should generally be corroborated by other evidence of employment discrimination." *Id.* (internal quotation marks omitted). "But there is an exception to that general rule: when the temporal proximity is 'very close,' temporal proximity alone may be 'sufficient to create an inference of the causal link.'" *Id.* (quoting *Marez v. St.-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012)). Although the Eighth Circuit has not drawn a definitive line, it has determined that two months or fewer can be close enough to establish causation alone. *Beard v. Falkenrath*, 97 F.4th 1109, 1121 (8th Cir. 2024) ("[T]emporal proximity alone may establish causation where the time lapse between the protected activity and the adverse action was two months or fewer[.]" (quoting *Charleston v. McCarthy*, 8 F.4th 772, 780 (8th Cir. 2021)) (alterations in original)); *see also Sisk v. Picture People, Inc.*, 669 F.3d 896, 901 (8th Cir. 2012) ("More than two months is too long to support a finding of causation without something more.").

Here, Plaintiff alleges that he was placed on the PIP within three weeks of complaining in January 2024 about discrimination, harassment, and a hostile work environment. Plaintiff also alleges that he was terminated six days after again complaining (in May 2024) about discrimination, harassment, and a hostile work environment. This temporal connection is sufficient to raise a plausible inference of retaliation under the circumstances alleged. *See Meinen v. Bi-State Dev. Agency*, 101 F.4th 947, 950 (8th Cir. 2024) (recognizing that "there is no bright

---

[8] As Honeywell points out, to the extent Plaintiff's complaint references failure to be promoted as an adverse action, the complaint is otherwise devoid of any well-pleaded facts that he applied for or was denied a promotion. Plaintiff did not address any such promotion claim in his opposition brief.

line establishing when temporal connection is or is not sufficient to satisfy the causation requirement [of a retaliation claim]" and that "an important consideration is the length of time between the protected activity and the adverse action"); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (holding that temporal connection of two weeks was sufficiently "close in time . . . to establish causation, completing Smith's prima facie case"); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113-14 (8th Cir. 2001) (noting that a "matter of weeks" between a protected activity and an adverse employment action was sufficient to satisfy the causation element of a prima facie case of retaliation); *see also Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006) (assuming that "a period of three weeks between Arraleh's complaint of discrimination and his failure to receive a permanent position . . . may suffice to establish causation in his prima facie case").

When a plaintiff has engaged in multiple instances of protected activity, the courts consistently measure the temporal proximity from the most recent protected activity. *See Avina v. Union Pac. R.R. Co.*, No. 4:19-00480-CV-RK, 2021 WL 2903245, at *8 (W.D. Mo. July 9, 2021) (focusing on Plaintiff's "most recent protected activity prior to that was the filing of the instant lawsuit in June 2019" under the retaliation claim); *Foster v. BNSF Ry. Co.*, 866 F.3d 962, 968 (8th Cir. 2017) (focusing on "[t]he plaintiffs' last alleged protected activity is their testimony at the investigative hearing" under the retaliation claim). Here, the most recent protected activity prior to Plaintiff's termination was on May 14, 2024, which was only six days before the termination. These two events are extremely close in time, and plausibly allege a causal connection to survive a motion to dismiss.

Absent "an obvious alternative explanation" or "detailed factual allegations" contained in the complaint or other materials that may be properly considered in the context of a Rule 12(b)(6) challenge, Honeywell's suggestion that Plaintiff was terminated because he did not successfully complete the PIP "is not sufficiently convincing . . . to render [Plaintiff]'s claim implausible." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 374 (8th Cir. 2017). Here, Plaintiff's allegations—which the Court accepts as true—include that prior to Mr. Mallen becoming his supervisor, he always received his bonus, at least one prior supervisor gave positive feedback about Plaintiff's performance, and another director indicated that he wanted Plaintiff to join his team.

Under Mr. Mallen's supervision, however, Plaintiff was placed on a PIP. During the PIP period, Plaintiff alleges that he received positive feedback from management in project meetings,

meetings for which Mr. Mallen was present and was in agreement. However, during the same time, one-on-one meetings with Mr. Malen "were difficult" and he gave Plaintiff "little face to face feedback." The Court does not—and need not—decide here whether the temporal connection is itself sufficient alone to state a prima facie case of retaliation as an evidentiary matter. The Court only finds that the complaint states a plausible claim for retaliation under federal and state law to survive a Rule 12(b)(6) motion to dismiss.

For these reasons, Honeywell's motion to dismiss Counts 5-7 for failure to state a claim is **DENIED**.

## IV. Hostile Work Environment (Count 8)

Finally, in Count 8 Plaintiff asserts a claim for hostile work environment. To state a claim for hostile work environment under federal or state law, Plaintiff must allege facts plausibly showing, in relevant part, that his age or disability or protected activity resulted in unwelcome harassment that was "severe enough to affect the terms, conditions, or privileges of his employment." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015). As set out above, there is a dearth of well-pleaded factual allegations of any harassment linked to Plaintiff's age or disabilities (or perceived disabilities) or any protected activity. "Not all unpleasant conduct creates a hostile work environment. Rather, the plaintiff must show that [he] was singled out because of [his age or disability]." *Parker v. United States Dep't of Agric.*, 129 F.4th 1104, 1113 (8th Cir. 2025) (quoting *Williams v. City of Kansas City*, 223 F.3d 749, 753 (8th Cir. 2000)). Plaintiff "offers little more than speculation and conjecture" to make the required connection between the harassment he alleges and a disability or age-related animus. *Id.* (internal quotation marks omitted).

Nor is the alleged harassment severe or pervasive to plausibly state a claim for hostile work environment. *See Warmington*, 998 F.3d at 799 ("At the pleading phase, the court must determine whether the alleged harassment is severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe [his] working conditions have been altered."). Plaintiff's allegations of harassment—primarily, not being moved to another department, being placed on a PIP, and Mr. Mallen giving Plaintiff little feedback and not being available for weekly meetings while Plaintiff was under the PIP—do not plausibly state a legally sufficient claim for hostile work environment. *See also Blomker*, 831 F.3d at 1057 ("The standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or

15

unpleasant to affect the terms and conditions of employment." (internal quotation marks omitted)). Plaintiff cites to no legal authority and provides no substantive analysis supporting his argument that his allegations of misconduct here rise to the level of severe and pervasive harassment or discrimination creating an objectively and subjectively hostile work environment.

Honeywell's motion to dismiss Count 8 for failure to state a claim is **GRANTED**.

### Conclusion

Therefore, after careful consideration and review and for the reasons explained above, the Court **ORDERS** that Defendant Honeywell's motion to dismiss under Rule 12(b)(6) for failure to state a claim is **GRANTED in part** and **DENIED in part**. Specifically, the following claims are **DISMISSED without prejudice** for failure to state a claim: age discrimination (Count 1 and Count 2), disability discrimination (Count 3 and Count 4), and hostile work environment (Count 8). Accordingly, only Plaintiff's claims for retaliation under federal and state law (Counts 5-7) remain.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 12, 2026